**WO**                                                                            .

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Pestube Systems, Inc., | ) | CV 05-2832-PHX-MHM |
| | ) | |
| Plaintiff, | ) | **ORDER** |
| | ) | |
| vs. | ) | |
| | ) | |
| HomeTeam Pest Defense, LLC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |
| _____ | ) | |

Currently before the Court is Plaintiff Pestube Systems, Inc.'s ("Plaintiff" or "Pestube") Sealed Motion for Partial Summary Judgment Re: Literal Falsity (Dkt.#43); Plaintiff's Motion to Strike (Dkt.#63); Defendant HomeTeam Pest Defense, LLC's ("Defendant" or "HomeTeam") Motion to Dismiss for Lack of Jurisdiction (Dkt.#73); Plaintiff's Motion to Strike New Arguments Raised in HomeTeam's Reply and Plaintiff's Alternative Request for Leave to File Supplemental Response to HomeTeam's Motion to Dismiss for Lack of Subject Matter Jurisdiction (Dkt.#92); Defendant's Motion for Leave to Submit Supplemental Expert Affidavit (Dkt.#99); and Plaintiff's Motion for Leave to Supplement its Motion for Partial Summary Judgment. (Dkt.#110). After reviewing the papers and record and holding oral argument on March 12, 2007, the Court issues the following Order.

1    **I.    Procedural History**

2    On October 4, 2005, Plaintiff filed its First Amended Complaint asserting claims of:

3    (1) Lanham Act violation pursuant to 15 U.S.C. § 1125(a); (2) Patent violation pursuant to

4    35 U.S.C. § 292; (3) common law Unfair Competition; and (4) common law Unjust

5    Enrichment. (Amended Complaint ("Compl.") ¶¶7-34). On May 24, 2006, the Court, upon

6    motion from Defendant, dismissed Plaintiff's Lanham Act claim without prejudice with leave

7    to amend because of Plaintiff's non-compliance with Rule 9(b) of the Federal Rules of Civil

8    Procedure. (Dkt.#35). On June 22, 2006, Plaintiff filed its Second Amended Complaint

9    ("Amended Complaint") asserting the same claims. On July 10, 2006, Defendant filed its

10   Answer to Plaintiff's Amended Complaint. (Dkt.#38). On August 23, 2006, shortly before

11   the Rule 16(b) Scheduling Conference, Plaintiff filed the instant Sealed Motion for partial

12   summary judgment regarding the issue of literal falsity as to Plaintiff's Lanham Act false

13   advertising claim. (Dkt.#43). On January 8, 2007, Defendant filed the instant Motion to

14   dismiss for lack of subject matter jurisdiction asserting that Plaintiff has failed to meet its

15   burden in establishing standing. Both Motions and the related motions are fully briefed.

16   **II.    Motion to Dismiss for Lack of Jurisdiction**

17   **A.    Subject Matter Jurisdiction**

18   Federal subject matter jurisdiction is a threshold issue that goes to the power of the

19   court to hear the case, so subject matter jurisdiction must exist at the time the action

20   commences. See Morongo Band of Mission Indians v. California State Bd. of Equalization,

21   858 F.2d 1376, 1380 (9th Cir. 1988), *cert denied*, Miller v. Morongo Band of Mission

22   Indians, 488 U.S. 1006 (1989). Rule 12(b)(1) Fed.R.Civ.P. permits a party to seek dismissal

23   of an action for lack of subject matter jurisdiction. The plaintiff bears the burden of

24   establishing the existence of subject matter jurisdiction. Stock West, Inc. v. Confederated

25   Tribes of Colville Reservation, 873 F.2d 1221, 1225 (9th Cir. 1989). There is a presumption

26   of a lack of subject matter jurisdiction until the plaintiff affirmatively proves otherwise. Id.

27   A Rule 12(b)(1) motion may be either facial or factual. Safe Air for Everyone v. Meyer, 373

28   F.3d 1035, 1039 (9th Cir. 2004).

1

### B. Standing

2    In order to bring suit in a federal court, a plaintiff must establish standing under the

3 "case or controversy" requirement of Article III to the United States Constitution.  SEC v.

4 Medical Committee for Human Rights, 404 U.S. 403, 407 (1972).  Standing is an essential

5 element of federal court subject matter jurisdiction.  South Lake Tahoe v. California Tahoe,

6 625 F.2d 231, 233 (9th Cir. 1980), *cert denied*, 449 U.S. 1039 (1980).  Standing involves both

7 constitutional requirements derived from Article III and judicially created prudential

8 limitations.  United States v. Mindel, 80 F.3d 394, 396 (9th Cir. 1996).  There are three

9 elements to the "constitutional minimum of standing." Lujan v. Defenders of Wildlife, 504

10 U.S. 555, 560 (1992).  "First, the plaintiff must have suffered an 'injury in fact' - an invasion

11 of a legally protected interest which is (a) concrete and particularized and (b) actual or

12 imminent non 'conjectural' or 'hypothetical.'"  Id.  "Second there must be a causal connection

13 between the injury and the conduct complained of - the injury has to be 'fairly ... trace[able]

14 to the challenged action of the defendant, and not ... th[e] result [of] the independent action

15 of some third party not before the court.'"  Id.  "Third, it must be 'likely' as opposed to merely

16 'speculative' that the injury will be 'redressed by a favorable decision.'"  Id. at 561. At the

17 pleading stage, general factual allegations of injury resulting from the defendant's conduct

18 may suffice, for on a motion to dismiss the court "presume[s] that general allegations

19 embrace those specific facts that are necessary to support the claims."  Id.  In response to a

20 motion for summary judgment, "the plaintiff can no longer rest on such 'mere allegations' but

21 must 'set forth' by affidavit or other evidence 'specific facts,' ... which for purposes of the

22 summary judgment motion will be taken as true."  Id.

23    ### C. Standing to Assert Lanham Act Claim Re: False Advertising

24    The Lanham Act creates a civil remedy against persons or entities who engage in

25 "false designations of origin, false descriptions, and false representation in the advertising

26 and sale of goods and services."  Waits v. Frito-Lay, 978 F.2d 1093, 1106 (9th Cir. 1992).

27 15 U.S.C. § 1125(a)(1)(B) provides in relevant part:

28

Any person who, on or in connection with any goods or services, or any container for goods uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which ... (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

To meet the standing requirement under the false advertising prong of the Lanham Act, "a plaintiff must show: (1) a commercial injury based upon a misrepresentation about a product; and (2) that the injury is 'competitive' or harmful to the plaintiff's ability to compete with the defendant." Jack Russell Terrier Network of Northern California v. American Kennel Club, Inc., 407 F.3d 1027, 1037 (9th Cir. 2005).

**D.    Analysis**

As evidenced by the pleadings addressing Defendant's Motion to dismiss for lack of subject matter jurisdiction, there is confusion as to whether Defendant's Motion constitutes only a facial challenge to the allegations of Plaintiff's Amended Complaint or a factual challenge requiring Plaintiff to offer evidence supporting its allegations. Initially, Plaintiff responded to Defendant's Motion to dismiss contending only that the allegations of its Amended Complaint, viewed in the light most favorable to the Plaintiff, adequately established its standing.    However, in Defendant's Reply brief, Defendant asserted that Plaintiff's decision to rely only the allegations of its Amended Complaint was insufficient because Plaintiff was obligated to present evidence establishing standing. (Plaintiffs' Reply, Dkt.#90, pp.3-7).   Defendant noted that in its Motion to dismiss it made reference challenging Plaintiff's ability to present evidence by stating "[a]bsent any allegation or evidence of actual competitive injury to Pestube, fairly traceable to HomeTeam's conduct, and likely to be redressed by the relief Pestube seeks, the Court should dismiss this case with prejudice." (Defendant's Motion, Dkt.#73, p.5).  Plaintiff, apparently believing that its opportunity to present such evidence was prejudiced by Defendant's allegedly misleading arguments in support of dismissal, has moved to strike the following new arguments raised

in Defendant's Reply: (1) Plaintiff's obligation to produce evidence; and (2) dismissal of all of Plaintiff's claims.  (Dkt.#92, p.2).  In the alternative, Plaintiff has moved for leave to file a supplemental response to Defendant's Motion to dismiss.

In reviewing the arguments advanced by the Parties and applicable law, the Court finds that because the Defendant's challenge is made upon a motion to dismiss pursuant to Rule 12(b)(1), with no controverting affidavits or evidence in opposition to Plaintiff's allegations, the Court is limited to a facial review of the allegations of Plaintiff's Amended Complaint.  Although the case is proceeding through discovery, the simple fact is that Defendant has not filed a motion for summary judgment, implicating the evidentiary standards of Rule 56, or motion for a preliminary hearing, but rather has filed a motion to dismiss for lack of standing under Rule 12(b)(1), which requires that the Court construe the allegations of Plaintiff's Amended Complaint as true in determining whether Plaintiff has properly asserted its standing.  Moreover, because of the absence of any controverting affidavits submitted by Defendant in its motion challenging the allegations of Plaintiff's Amended Complaint, the Court finds no fault with Defendant's response relying only on the allegations of the Amended Complaint.  The Court finds the authority cited by Defendant suggesting that Plaintiff was obligated to present affirmative evidence to be distinguishable from this case.  For instance, in American Postal Workers Union of Los Angeles v. U.S. Postal Service, 861 F.2d 211, 213 (9th Cir. 1988), the Ninth Circuit found the district court acted properly in addressing the issue of standing upon a motion for dismissal or summary judgment which required the court to look outside the pleadings to the relevant collective bargaining agreement and affidavits.  The Ninth Circuit noted that such consideration of documents beyond the pleadings did not convert the preliminary hearing on standing into a motion for summary judgment. Id.  However, the Ninth Circuit's holding in American Postal, does little to suggest that the Plaintiff in this case was required to adduce affirmative evidence establishing its standing in response to a motion to dismiss with no accompanying affidavits or evidence challenging the allegations of its Amended Complaint.  If the Defendant had submitted evidence opposing the allegations of Plaintiff's Complaint, then the

Plaintiff likely would have been obligated to offer its own controverting evidence.  See Data Disc, Inc. v. Systems Tech. Assoc., Inc., 557 F.2d 1280, 1284 (9th Cir. 1977) (court "may not assume the truth of allegations in a pleading which are controverted by affidavit."). Moreover, the Defendant's reliance on Doherty v. Rutgers School of Law-Newark, 651 F.2d 893 (3d Cir. 1981) is equally unpersuasive.  In Doherty, the Third Circuit affirmed the district court's decision dismissing the plaintiff's complaint for lack of standing when in reviewing the complaint, together with the defendant's uncontroverted affidavits, the court determined the plaintiff lacked standing. Id. at 898.  However, when compared to Doherty, this case is in a different posture, as Defendant has asserted a motion to dismiss for lack of subject matter jurisdiction attacking the allegations of Plaintiff's Amended Complaint, with no controverting evidence.   Under such circumstances, the Court finds no flaw in the Plaintiff's reliance on the allegations of its Amended Complaint.  Should the Court determine Plaintiff's allegations are sufficient to establish standing, addressed below, the appropriate vehicle to challenge the evidentiary basis of Plaintiff's standing is through a motion for summary judgment or request for preliminary hearing. See 13A C. Wright, A. Miller, and E. Cooper, *Federal Practice and Procedure*: *Jurisdiction* 2d § 3531.15, at 97, 99 (1984).

In reviewing the allegations of Plaintiff's Amended Complaint, and construing them as true, the Court finds there is sufficient basis to determine that Plaintiff possesses standing to assert its Lanham Act claim before this Court.   See Lujan, 504 U.S. at 560 (noting that at the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice.).  In applying this liberal standard, Plaintiff satisfies all of the requisite standing elements.   For instance, Plaintiff's Amended Complaint alleges that it is a competitor of Defendant (Amended Complaint, Dkt.# 36, ¶12).  Plaintiff also alleges that Defendants have provided false, deceptive and misleading descriptions or representations of its "Tubes in the Wall" product which have "actually deceived or have a tendency to deceive a substantial segment of the audience" (Id. ¶46); and that as a "direct and proximate consequence of HomeTeam's conduct ... Pestube has been ... damaged as a result" and that such damage will continue. (Id. ¶48).  In taking these allegations as true, they provide a

sufficient basis demonstrating the existence of a "concrete particularized" injury causally connected to Defendant's alleged false advertising activities that may be redressed by the Court. Lujan supra.  In addition, such allegations sufficiently suggest that the alleged misrepresentations are commercial in nature and cause a competitive injury to Plaintiff. See Jack Russell 407 F.3d at 1037.  Defendant takes issue with the fact that Plaintiff's Amended Complaint does not expressly allege that it suffered a "competitive injury," however, at the very least, that allegation, necessary to establish Lanham Act standing, is properly inferred from the other allegations of the Amended Complaint, such as that the Parties are competitors and that Plaintiff has been harmed by Defendant's alleged false advertising activities.   As such, the Court finds that the Plaintiff has properly alleged its standing before this Court. Thus, the Court will address the merits of Plaintiff's Motion for partial summary judgment regarding its Lanham Act claim.

### III.    Motion for Partial Summary Judgment

#### A.    Background

Plaintiff's Lanham Act claim is based upon the Defendant's use of a pest control system referred to as "Tubes in the Wall" or "TITW."  The TITW System is a  home pest control system that is installed and serviced by Defendant HomeTeam.  The TITW System contains a network of small perforated and non-perforated plastic tubing that is installed in certain walls of a home during construction and linked to a service port on the exterior of the home.  The pest control substance is injected into the plastic tubing through a service port to the exterior of the home.  In the course of HomeTeam's existence, HomeTeam has promoted the Tubes in the Wall System to consumers, such as home builders.  Plaintiff contends that many of the promotional statements made by HomeTeam are actionable under the Lanham Act and, upon the instant Motion, seeks a determination that these statements are literally false.  Defendant disputes any such contention.

#### B.    Standard

A motion for summary judgment may be granted only if the evidence shows "that there is no genuine issue as to any material fact and that the moving party is entitled to

judgment as a matter of law." Fed.R.Civ.P. 56(c).  To defeat the motion, the non-moving party must show that there are genuine factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 2511 (1986).  The party opposing summary judgment "may not rest upon the mere allegations or denials of [the party's] pleadings, but ... must set forth specific facts showing that there is a genuine issue for trial." Rule 56(e).  See Matsushita Elec. Indus. Co., v. Zenith Radio Corp., 475 U.S. 574, 586-87 106 S.Ct. 1348 (1986).  The evidence must be viewed in the light most favorable to the nonmoving party.  Devereaux v. Abbey, 263 F.3d 1070, 1074 (9th Cir. 2001) (en banc).

**C.    Plaintiff's Motion to Strike; Defendant's Objection to Plaintiff's New Evidence; Defendant's Motion for Leave to Submit Expert Affidavit; and Plaintiff's Nunc Pro Tunc Motion for Leave to Supplement its Motion for Partial Summary Judgment**

In Plaintiff's Reply to Defendant's Response to Plaintiff's Statement of Facts and Response to Defendant's Controverting Statement of Facts, Plaintiff moves to strike most of the factual assertions set forth by Defendant. (Dkt.#63).  Specifically, Plaintiff moves to strike paragraphs 1-4,8,10,11,15-22,24-34,36-42,44-50 of Defendant's Controverting Statement of Facts.  Plaintiff moves to strike these statements on a variety of grounds including that the factual assertions are not relevant, not supported by the evidence and unreliable.  The Court, to the extent a motion to strike is even a proper vehicle to contest these factual assertions as opposed to an objection, and to the extent the Court relied upon the factual statement at issue, will deny Plaintiff's request.  These factual assertions bear on material issues in this litigation and possess sufficient foundation in the record.  To the extent the Court did not rely upon a factual assertion at issue, Plaintiff's motion to strike is denied as moot.

The Court will overrule the objection filed by Defendant regarding Plaintiff's assertion and reliance upon alleged new evidence submitted in support of Plaintiff's Reply in support of its Motion for partial summary judgment. (Dkt.#67).  Specifically, Plaintiff relies upon the affidavits of Mr. Richard R. Schmitt, Sr. and Mr. Lindsey Potts to controvert some of the

evidence relied upon by Defendant in its Controverting Statement of Facts.  (Dkt.#62, Exhibits 1 and 2). Although these affidavits were not disclosed in Plaintiff's opening Motion to the Court, it appears that the affidavits are not being offered as new evidence, but rather to controvert certain statements of fact submitted by Defendant.  For instance, in Mr. Potts' affidavit he takes issue with the scientific findings and opinion offered by Defendant through Phillip Koehler Ph.D., ("Dr. Koehler") (DCSOF ¶¶24-38), by stating that Dr. Koehler's findings and testing do not support any statement regarding the asserted efficiency or the effectiveness of the TITW System. (Dkt.#61, Exhibit 2).   Moreover, because of the Court's consideration of the evidence submitted by Plaintiff in support of its Reply, the Court will also grant Defendant's request for leave to submit the supplemental affidavit of Dr. Koehler responding to the positions advanced by Mr. Potts. (Dkt.#99).   Finally, the Court will also grant Plaintiff's Motion to supplement its original statement of facts with the discovery responses recently obtained from Defendant. (Dkt.#110). In the interest of addressing the instant dispute on the merits, the Court will grant these requests to submit supplemental evidence in support of each Parties' position, but notes that any such requests in the future will be closely scrutinized.

### D.    Analysis

The elements of a Lanham Act false advertising claim under 15 U.S.C. 1125(a)(1)(B) are:

> (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of the of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused the false statement to enter instate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by diversion of sales from itself to defendant or be a lessening of the goodwill associated with its products.

Southland Sod Farms v. Stover Seed Co., 108 F.3d 1134, 1139 (9th Cir. 1997) (citations omitted).

"To demonstrate falsity within the meaning of the Lanham Act, a plaintiff may show that the statement was literally false, either on its face or by necessary implication or that the statement was literally true, but likely to mislead or confuse consumers." Id. (citing Castrol,

Inc., v. Pennzoil Co., 987 F.2d 939, 946 (3d Cir. 1993)).  As noted by Plaintiff, statements alleged to be literally false can be characterized as: (1) testor study validated or (2) baldly asserted.  C.B. Fleet Co., Inc., v. SmithKline Beecham Consumer Healthcare, 131 F.3d 430, 435 (4th Cir. 1997).  For instance when an advertising claim of favorable fact either expressly or impliedly asserts that the fact is test study-validated, the fact of validation becomes an integral part of the claim.  On the other hand, when the claim is baldly asserted, with no assertion of test or study validation, its literal falsity may be proven by proof that the favorable fact baldly asserted is false Id. (citing Rhone-Poulenc Rorer Pharms., Inc. v. Marion Merrell Dow, Inc., 93 F.3d 511, 514-15 (8th Cir. 1996); BASF Corp v. Old World Trading Co. Inc., 41 F.3d 1081, 1091 (7th Cir. 1994); Castrol, Inc. v. Quaker State Corp., 977 F.2d 57, 62-63 (2d Cir. 1992)).  "To prove that an advertisement based on product testing is literally false, 'a plaintiff must do more than show that the tests supporting the challenged claim are unpersuasive.'" Southland Sod, 108 F.3d at 1139 (citing McNeil-P.C.C., Inc. v. Bristol-Myers Squibb Co., 938 F.3d 1544, 1549 (2d Cir. 1991).  "Rather, the plaintiff must demonstrate that such tests 'are not sufficiently reliable to permit one to conclude with reasonable certainty that they established' the claim made." Id. (quoting Procter & Gamble, 747 F.2d at 119).  "A plaintiff may meet this burden either by attacking the validity of the defendant's tests directly or by showing that the defendant's tests are contradicted or unsupported by other scientific tests."  Id.; see also Quaker State, 977 F.3d at 62-63. "Moreover, '[i]f the plaintiff can show that the tests, even if reliable, do not establish the proposition asserted by the defendant, the plaintiff has obviously met its burden' of demonstrating literal falsity." Id. (citing Quaker State).  When evaluating whether an advertising claim is literally false, "the claim must be analyzed in its full context." Id.

Plaintiff asserts that multiple promotional statements made by Defendant regarding the TITW System are literally false.  Plaintiff asserts that such literally false statements are made in the context of  testor study validated claims as well as baldly asserted claims.  The Court will address the two groups of statements separately below.

### (1)    Test Study Statements

1

2

                **(a)     Alleged Statement #1:**
    **Scientific Data...Independent <u>University of Florida</u> research supports effectiveness of Tubes in the Wall delivery system.**

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

      Plaintiff alleges that the testing conducted at the University of Florida produced results contrary to HomeTeam's promotional claims regarding "effectiveness" of the TITW system and thus the above statement is literally false.  Plaintiff argues that the testing done by Dr. Koehler, of the University of Florida, in 2002, actually demonstrated that the TITW system provided poor pesticide distribution and poor insect mortality.  (PSOF ¶ 66K).  In asserting this argument Plaintiff cites the notes of Dr. Koehler suggesting varying results ranging from high to low mortality rates of the tested insects.  (Id.).  Moreover, Plaintiff notes that Jerry Gahlhoff ("Mr. Gahlhoff"), Defendant's former Vice President of Technical Services, testified that the results from the testing were not to be published or used for marketing purposes.  (PSOF ¶66n).  In opposition, to Plaintiff's argument, Defendant notes that Dr. Koehler did in fact begin testing the TITW System in 2002 at the University of Florida.  (DCSOF ¶ 24).  Defendant further relies upon the affidavit of Dr. Koehler stating that based upon his research and testing in 2002 and 2005, to a reasonable degree of scientific certainty, "the Tubes in the Wall System delivers a sufficient amount of pesticide into wall voids to kill insects in the wall voids and is an effective pest control system." (DCSOF ¶ 26).  Further, Defendant asserts that the statement at issue is not actionable as it amounts only to puffery.

20

21

22

23

24

25

26

27

28

      In reviewing these arguments, it appears clear that there is an issue of fact surrounding whether the promotional statement regarding the University of Florida testing results are literally false.  The crux of the dispute centers around the notes of Dr. Koehler's 2002 examination suggesting inconsistent results as to the effectiveness of the TITW System (PSOF ¶ 66k) compared with Dr. Koehler's sworn statement suggesting that based upon his tests, the TITW System is an effective system. (DCSOF ¶26)  While, Plaintiff takes issue with the Defendant's reliance on Dr. Koehler's 2005 testing results, as they may have occurred subsequent to the distribution of the promotional materials at issue, it is undisputed between the Parties that his 2002 examination occurred prior to any distribution of the

alleged actionable statement.  Importantly, Dr. Koehler's opinion as to the effectiveness of the TITW System is based, at least in part, upon his 2002 testing results.  Additionally, it is relevant to note that Plaintiff challenges the reliability of the tests performed and the overall opinion of Dr. Koehler with the affidavit of Mr. Potts (Dkt.#61, Exhibit 2).  Specifically, Mr. Potts asserts that Dr. Koehler's tests did not support his conclusion regarding the effectiveness of the TITW System. (Id. ¶7).  Notably, in response to Mr. Potts' challenge, Dr. Koehler responds submitting his expert affidavit stating again that the testing performed demonstrates that the TITW System is an effective method to deliver pesticide and  that the testing performed is scientifically sound and reliable.  (Dkt.#103, § III(C)).  At the very least, there is a clear dispute between the Parties regarding the reliability and results produced by the tests performed on the TITW System.  Plaintiff appears to argue that Dr. Koehler's expert opinion and the tests upon he which relies should be deemed unreliable as a matter of law under the standards set forth in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579-591-99 (1993).  However, this argument is premature in light of the current posture of the case.  Certainly, prior to trial, Plaintiff has the ability to move to exclude or strike the expert opinion of Dr. Koehler regarding the tests performed and the reliability thereof; however, at this point, the Court's inquiry is limited to whether there is a genuine issue of material fact regarding the test-proved statement in dispute.  For the reasons explained above, the Court finds there is such a factual issue.[1]  See C.B. Fleet Co., 131 F.3d at 434 ("[w]hether an advertisement is literally false is an issue of fact.");  Clorox Co. Puerto Rico v. Proctor & Gamble Commercial Co., 228 F.3d 24, 34 (1st Cir. 2000).

---

[1]In Southland Sod, the Ninth Circuit evaluated the defendants' Daubert challenge to plaintiff's expert testimony regarding the unreliability of the tests supporting the advertisement statement at issue.  The Ninth Circuit first reversed the district court's decision excluding the proffered expert testimony on relevancy grounds and then performed a Daubert inquiry as to the reliability of the expert's opinions finding that defendants failed to demonstrate plaintiffs were unable to make a sufficient showing regarding the reliability of the expert's opinions and tests.  Id. at 1141-42.  Contrary to Plaintiff's argument, nothing in Southland Sod, suggests that the Court should forego such a Daubert inquiry regarding an expert's opinion addressing a test proved statement.

Lastly, contrary to Defendant's argument, while the statement as to the TITW System's effectiveness may be somewhat broad in scope, because of the specific link to scientific testing to support the statement, the statement cannot be deemed to be puffery as a matter of law as Defendant asserts.  <u>Southland Sod</u>, 108 F.3d at 1145 ("[a] specific and measurable advertisement claim of product superiority based on product testing is not puffery.").

**(b)     Alleged Statement #2**
**HomeTeam Pest Defense ... Tubes in the Walls-Risk Assessment.  The purpose of this document is to address the various 'what if's' related to Tubes in the Wall. By identifying potential risks and issues, we have spent years conducting both internal and independent investigations into the perceived risks associated with the Tubes in the Wall system.  Listed below are risks that we have already mitigated through sound scientific research: ...**
**5.        System Clogging. Before any pest control material is used in the TITW system we inject the material for an equivalent of 20 years (80 applications) to ensure that the tubing is not damaged, clogged, or otherwise harmed.  These tests are conducted under heat lamps to simulate the most difficult environmental conditions ...**
**D.        Scientific Data .. 20 year tests to support tube delivery system.**

Plaintiff asserts that several aspects of this statement appearing in Defendant's promotional materials are literally false.  Plaintiff notes that the only documented controlled test regarding injections into the TITW System to ensure an absence of clogging was performed in February and March of 2005 by Mr. Clayton Dobbs, an employee of HomeTeam, at the direction of Mr. Gahlhoff.  (PSOF ¶48).  In that test, not performed under any heat lamp contrary to the assertion in the promotional materials, the application of the pesticide material  was stopped after the 73rd application because of clotting and clogging.  (PSOF ¶ 61-62, 65e).  In opposition to Plaintiff's position, Defendant asserts that while it does not dispute that the evidence indicates that the tests were not conducted under a heat lamp, the Plaintiff has ignored the testimony of Mr. Dobbs regarding the testing he performed in 2000 and 2001 involving application of the pesticide utilized in the TITW system, Tempo Ultra SC, over a three month period.  (DCSOF ¶¶ 19-21).  Moreover, Defendant cites the testimony of Mr. Dobbs that further tests were performed in 2005 to determine the compatibility of the Tempo Ultra SC with the TITW system.  (DCSOF ¶23).  Notably, Defendant's expert, Dr. Koehler, also offers his opinion that the testing performed

by Mr. Dobbs in 2000 or 2001 provides a sufficient scientific basis to support Defendant's promotional statements.  (Dkt.#103, § III(D)).  Moreover, Dr. Koehler, offers a similar opinion regarding Mr. Dobbs' 2005 test and the effectiveness of the TITW System.  (Id.).

In reviewing these arguments, it is apparent that the statement: "[t]hese tests are conducted under heat lamps to simulate the most difficult environmental conditions" is literally false.   In relying on the deposition testimony of Mr. Dobbs regarding the tests he performed, Defendant argues only that the evidence indicates that the tests were conducted in challenging environmental conditions, such as in the heat of Florida. (Defendant's Response, pp.7-8); (DCSOF ¶¶ 20, 23).  However, the Court struggles to see how such an argument possesses merit in light of the specific promotional assertion made by Defendant. It is a clear  representation of fact made by Defendant to bolster the attractiveness and credibility of the product.  As such, the Court finds that this statement, viewed in its full context, is literally false.

In reviewing the remaining advertising statements, there is an issue of fact as to whether the test study statement regarding the testing performed by the Defendant on the TITW system is literally false.  As noted above, there is evidence in the record suggesting that tests were performed evaluating damage or clogging with the TITW system after injecting the pesticide material repeatedly over a period of time to simulate use of the product over a long period of time, *i.e.*, 20 years. (DCSOF ¶ 19-21).  For instance, according to Mr. Dobbs' testimony regarding the tests performed in 2000 or 2001, over approximately a three month period, he injected the tubing of the product with the pesticide material approximately 80 to 85 times.  (DCSOF ¶20).  Additionally, Mr. Dobbs offered his testimony stating that the system was compatible with the Tempo Ultra SC pesticide. (DCSOF ¶23).  Moreover, Dr. Koehler, offers his expert opinion supporting the tests and results purportedly achieved. While, Plaintiff clearly disputes the reliability of such testing and the results advertised by Defendant and supported by Dr. Koehler, the Court cannot determine, as a matter of law, that the statement is in fact literally false.

**(c)     Alleged Statement #3**

1
2

**HomeTeam Pest Defense 10 Key Features of the Patented Pest Defense Tubes in the Wall ... 5.  The 1.25 inch diameter tubes are injected with non-clogging, aerosol-type pest control materials designed specifically for use with the pest defense system.**

3
4
5
6
7
8
9
10
11
12

Plaintiff contends that this statement is literally false because contrary to the statement, Mr. Dobbs' testing of the product revealed that the pesticide used in the TITW system actually caused clogging. (PSOF ¶¶48-62).  Moreover, Plaintiff asserts that Mr. Gahlhoff's deposition testimony under oath reveals that Tempo Ultra SC pesticide was not designed specifically for use in the Tubes in the Wall system.  (PSOF ¶44).  Defendant, on the other hand, again disputes any notion of literal falsity.  Specifically, Defendant disputes Plaintiff's interpretation of Mr. Dobbs' findings with respect to clogging of the system.  In addition, Defendant notes that the Tempo Ultra SC pesticide is specifically designed for "wall voids" which is used by the Tubes in the Wall system; thus Defendant's promotional statements are not literally false.

13
14
15
16
17
18
19
20
21
22
23
24

In reviewing the arguments advanced, the Court cannot find as a matter of law that the statements at issue are literally false.  First, as discussed above, with respect to the clogging in the system in the test performed by Mr. Dobbs, there is evidence in the record suggesting that the results demonstrated compatibility with the TITW system, as opposed to clogging or damage asserted by Plaintiff. (DCSOF ¶¶23,27).  Moreover, with respect to Plaintiff's argument regarding whether the Tempo Ultra SC pesticide was specifically designed for the Tubes in the Wall System, there is evidence suggesting that the Tempo Ultra SC pesticide is designed specifically for use in wall voids, an apparent feature of the Defendant's product. (DCSOF ¶¶33,34).  Further, Dr. Koehler offers his opinion supporting this position.  (Dkt.#103 § III(A)).  As such, in light of the controverting views and evidence, it would be inappropriate for this Court to make a determination that such a statement is literally false as a matter of law.

25
26
27

**(d)    Alleged Statement #4**
**HomeTeam Pest Defense 10 Key Features of the Patented Pest Defense Tubes in the Wall ... 1. This innovative system has been tested and been proven for integrity and efficiency by entomologists, toxicologists, and flow engineers.**

28

Plaintiff claims this statement is literally false because the TITW System has never been tested by a flow engineer, rather only Dr. Koehler, an entomologist and Dr. Lipsey, a toxicologist, have tested the product.  Moreover, Plaintiff claims the integrity and efficiency have not been proven.  In opposition, Defendant concedes that to date there is no evidence indicating testing by a flow engineer; however, contends that upon reviewing the statement as a whole, the statement is not literally false.  Defendant also asserts that the results of the tests performed on the TITW System do suggest that the product has been "proven for integrity and efficiency."  In addition, Defendant argues that such a statement does not convey an objective measurable statement of fact and thus is puffery.

Contrary to Defendant's argument, the promotional statement made by Defendant that the TITW system was tested by entomologist, toxicologists <u>and</u> flow engineers is literally false.  The fact that no testing was performed by a flow engineer makes the statement literally false as it is a false representation of specific fact regarding the testing performed to bolster the credibility and appealability of the product to the consumer.

However, to the extent Plaintiff asserts that the statement is literally false because of the references to the testing proving "integrity" and "efficiency," again there is a factual dispute as to whether the testing supports such results.  As noted above, Defendant's expert offers his opinion that the testing and results obtained support such a test study statement. (DCSOF ¶26; Dkt.#103).  As such, as discussed above, there is a factual issue regarding the integrity and efficiency of the TITW System.

**(e)   Alleged Statement #5**
**At your request, I recently performed an environmental assessment of the home located on Woodfield Circle in Jacksonville, Florida.  This home has a built in Pest Defense Tubes in the Wall pest management system containing a series of interconnected polyethylene tubes running through the wall voids.   This series of tubing is periodically injected with insecticide to destroy household pests that may congregate within the walls of the home...The results of this testing protocol are as follows: no trace of the applied Tempo pest material was found in the air inside the home.  This allows me to comfortably conclude that the Tubes in the Wall system and method of applying pest material through the tubing network in (sic) not only the latest and most effective pest management method, but is also the safest way for homeowners to control insects pests without worrying about exposure to pest materials.  Thank you for allowing me**

**to participate in your evaluation of this innovative and effective pest management system.**

Plaintiff takes issue with several statements of this paragraph written by Dr. Lipsey to Defendant's CEO, which appears in HomeTeam's promotional materials.  Plaintiff contends that the statements that the TITW System is the "most effective pest management method" and is "effective pest management system" should be construed as literally false as they are not supported by the testing.  Defendant; on the other hand, argues that these statements are not actionable and are more appropriately classified as puffery.

As an initial matter, contrary to Defendant's position, the fact that the statement at issue sets forth broad assertions such as the TITW System is the "most effective pest management method" is not detrimental to Plaintiff's test study allegation.  Notably, the statement at issue provides support for such an assertion through testing performed on the product.  However, while the statement does not appear to amount to puffery, the statement does appear supported in light of the opinion offered by Defendant's expert, Dr. Koehler, stating that the TITW System is an effective method to deliver pesticide into homes. (DCSOF ¶¶ 26-28; Dkt.#103, §3(B),(D)).   As such, there is an issue of fact as the literal falsity of this statement.

### (f)     Alleged Statement #6
**Tubes in the Wall How Does it Work? ... Third-party tested effective and guaranteed to control household pests.**

Plaintiff contends that the above statement is literally false as the record demonstrates that the TITW System is not effective in killing and controlling household pests.  (PSOF ¶¶ 13-20).  However, as discussed above, there is an issue of fact surrounding the test supported effectiveness of the TITW System, as such summary judgment on this assertion would be improper.  Moreover, in opposition to Plaintiff's issue with the assertion regarding a guarantee of TITW System, Defendant offers the affidavit of Mr. Matthew Turk ("Mr. Turk"), the Regional Vice President of HomeTeam, stating the TITW system is guaranteed to control household pests and that if a customer is unhappy with the performance,

HomeTeam will return to home and retreat to the customer's satisfaction. (DCSOF ¶46).  As such, there is at least an issue of fact regarding this assertion.

### (2)   Baldly Asserted Claims

#### (a)   Alleged Statement #1
**Pest Defense Tubes in the Wall .. the patented defense Tubes in the Wall system targets household pests right where they live.**

Plaintiff contends that Defendant's assertion in its promotional materials that the TITW system is patented is literally false.  Plaintiff concedes that Defendant holds a license for Patent No. 4,944,110 (the "'110 Patent") but argues that because the TITW system does not conform to the specific claims of the '110 Patent due to the Defendant's use of a non-expanding pesticide that Defendant's assertion that the TITW system is patented is literally false.  Plaintiff asserts that Defendant's use of the Tempo Ultra SC pesticide system removes it from the scope of the '110 Patent because it is not an expanding pesticide.  (PSOF ¶33). In opposition, Defendant disputes the Plaintiff's position as to its alleged non-compliance with the '110 Patent.  Defendant notes that it is the exclusive license holder of the '110 Patent and Patent No. 5,231,796 (the "'796 Patent") and argues, that at the very least, Plaintiff has failed to meet its burden demonstrating Plaintiff's non-compliance with the '110 and '796 patents.

In reviewing the record as to this issue, the Court finds that at the present time there is an issue of fact regarding the patent over the TITW System.  While, Plaintiff takes issue with the Defendant's use of the Tempo Ultra SC, which may be a non-expanding pesticide not contemplated in the '110 Patent, Plaintiff makes no mention of the application of Defendant's license over the '796 Patent, which contemplates a "gas or liquid" distribution system, which would potentially encompass the Tempo Ultra SC pesticide. Thus, because there is an issue of fact as to whether the TITW System complies with the '110 or '796 Patent, the Court cannot find this statement to be literally false as a matter of law.

#### (b)   Alleged Statement #2
**HomeTeam Pest Defense 10 Key Features of the Patented Pest Defense Tubes in the Wall ... 10. The Pest Defense System is patented and can only be serviced by HomeTeam Pest Defense certified technicians.**

Plaintiff contends that the portion of the above statement that only HomeTeam pest defense certified technicians can service the product is literally false under the "first sale" or "exhaustion" doctrine.  Specifically, Plaintiff asserts that an authorized unrestricted sale of a patented product depletes the patent right with respect to the product.  As such, Plaintiff asserts that because other non-approved technicians are able to work on the product, Defendant's statement is literally false.  In opposition, Defendant asserts that Plaintiff's argument with respect to who can perform work on the TITW system is factually and legally inaccurate.

Plaintiff appears to draw the conclusion that Defendant is representing that because the Defendant holds the product out as patented that only Defendant's technicians are able to work on the system.  However, that reading is misplaced in light of the fact that there are two distinct statements of fact at issue: (1) that the product is patented; and (2) it can only be serviced by Defendant's certified technicians.   In looking to the evidence supporting the latter statement, it appears the statement possesses veracity because of the Defendant's policy voiding the warranty in the event the consumer permits an unapproved technician to work on the system.  (DCSOF ¶ 11).   At the very least, there is an issue of fact as to whether the statement is literally false.

### (c)   Alleged Statement #3
**Through the service ports, Pest Defense technicians inject pest control materials into the tubes, distributing them evenly within the walls.**

Plaintiff contends that this statement is literally false because the testing performed by Dr. Koehler in 2002 and 2005 and by Mr. Dobbs in 2005 demonstrate that the TITW system actually distribute the material unevenly. (PSOF ¶¶ 48-61, 65a-i).  However, notwithstanding the fact that Dr. Koehler's offers his affidavit stating that his research and testing demonstrate that the pesticide was distributed out of each hole in the tubing suggesting even distribution (DCSOF ¶ 27), it is difficult to see how this statement could be actionable under the Lanham Act.  The meaning of the term "evenly," which is the key to the dispute, is subject to broad and varying degrees of meaning and is not a specific and detailed statement of fact that is alleged to be supported by testing.  As such, given the breadth and

1   ambiguity of such a bald statement regarding the product's quality, the Court finds that the

2   statement amounts to non-actionable puffery outside the scope of Lanham Act protection.

3   See Southland Sod, 108 F.3d at 1145 ("product superiority claims that are vague or highly

4   subjective often amount to nonactionable puffery.") (citing Cook, Perkiss & Liehe, Inc. v.

5   Northern Cal. Collection Serv., Inc., 911 F.2d 242, 245 (9th Cir. 1990)).

6   **(d)     Alleged Statement #4**

**The Tubes in the Wall system maximizes the effectiveness of the pest**
7   **control materials.**

8   Plaintiff asserts that this statement is literally false because the findings of Drs.

9   Koehler, Lipsey and Oi regarding insect mortality do not demonstrate the effectiveness of

10   the pest control materials**.** (PSOF ¶¶ 14-20). Defendant asserts that the statement is true and

11   in the alternative amounts only to puffery. Again, because the statement is not alleged to

12   be supported by testing, the statement is a bald statement of overall product quality that is

13   subject to wide and varying degrees of interpretation. Such statements are not the type of

14   specific and detailed statements contemplated as actionable under the Lanham Act. As such,

15   because of the ambiguity associated with this statement, the Court finds that it amounts to

16   puffery and thus is not actionable.

17   **(e)     Alleged Statement #5**

**Blue is feeder tube, yellow is laser perforated.**
18   Plaintiff asserts that this statement is literally false because the deposition testimony

19   Mr. Gahlhoff demonstrates that the yellow tubing is not laser perforated. (PSOF ¶42).

20   However, Defendant opposes Defendant's argument noting evidence in the record that

21   Defendant utilizes both laser and razor perforated tubing. (DCSOF ¶6). Specifically,

22   Defendant cites the affidavit of Mr. Turk stating that Defendant utilizes yellow tubing and

23   possesses both laser and blade perforated tubing. (Id. ¶14). In reviewing the disputed

24   factual evidence on this point, it is apparent that there is, at the very least, a factual issue as

25   to literal falsity. As such, the determination is better left to the finder of fact in resolving the

26   apparent conflict between the deposition testimony of Mr. Gahlhoff (PSOF ¶ 42) and the

27   sworn statement of Mr. Turk. (DCSOF ¶ 6).

28

**(f)     Alleged Statement #6**
**We have installed the TITW system in over 130,000 homes over the past fifteen years...**

Plaintiff contends that this statement is literally false  because HomeTeam did not come into existence until November 27, 2002 (PSOF ¶2) and thus, it is impossible for so many systems to have been installed in such a short period of time.  In opposition to Plaintiff's argument, Plaintiff notes that HomeTeam has actually been in the pest control industry since 1996 when it acquired substantially all of the assets of Environmental Safetysystems. (DCSOF ¶¶ 1-3).  Plaintiff notes that in 2002 Enhanced Safetysystems merged with HomeTeam and thus the corporate form of HomeTeam was modified. Moreover, since 1996, Defendant states that it has installed in excess of $250,000 Tubes in the Wall systems.  (DCSOF ¶ 10).  The competing arguments evidence that there is a factual dispute  between the Parties as to the genesis of Defendant HomeTeam and the number of homes it has serviced with the TITW system since it began doing business.  In light of this factual dispute, this matter is better left to the trier of fact as to literal falsity.

**(g)     Alleged Statement #7**
**HomeTeam Pest Defense 10 Key Features of the Patented Pest Defense Tubes in the Wall ... 5. After each application, the tubes are purged with dry nitrogen, which insures pest control materials do not remain in the tubes.**

Plaintiff contends that this statement is literally false because the testing performed by Mr. Dobbs demonstrates that the pesticide material will remain in the tubes following treatment. (PSOF ¶¶48-62)  In opposition, Defendant notes the deposition testimony of Mr. Steven Fisher indicates that after each application of the pesticide, the service technician is directed to purge the system with nitrogen. (DCSOF ¶8).  Moreover, Defendant notes the affidavit of Dr. Koehler stating that no pesticide remains in the tubes after the tubes were treated.  (DCSOF ¶27).  Again, in light of the competing arguments and evidence advanced, it is apparent there is a factual dispute regarding the issue of literal falsity.

**(h)     Alleged Statement #8**
**Each installation is fully inspected for efficacy**.

1  Plaintiff asserts that this statement is literally false because only a small percentage
2  of installations receive inspection.  Plaintiff further contends that none of the inspections are
3  done for efficacy.  (PSOF ¶80).  In opposition, Defendant offers as evidence the affidavit of
4  Mr. Turk stating that the installers are directed to ensure that each installation is done to
5  specified standards.   (DCSOF ¶48).   Moreover, Defendant asserts that an additional
6  inspection is performed by supervisors on approximately 20% to 30% of the installations to
7  ensure that the installation is properly performed.  (DCSOF ¶49).

8  Notwithstanding the fact that the word "efficacy" is not used in this statement to make
9  a specific and detailed objective statement of fact; to the extent Plaintiff contends that
10  inspections are not performed on the installations as advertised, the Court finds there to be
11  a material issue of fact.  Defendant has provided evidence suggesting that for each
12  installation, the installer is directed to inspect the system in accordance with the policies of
13  Defendant.  Under such circumstances, it is a matter for the trier of fact to determine whether
14  the statement is literally false.

15  **IV.  Summary**

16  The Court finds that based upon the allegations of Plaintiff's Amended Complaint in
17  opposition to Defendant's facial challenge upon motion to dismiss, there is sufficient basis
18  suggesting the existence of a particularized and concrete competitive injury, causally related
19  to the Defendant's conduct.  As such, the Plaintiff has standing to assert its Lanham Act
20  claim.  Moreover, in reviewing the alleged actionable commercial statements made by
21  Defendant, the Court finds there to be a genuine issue of material fact existing as to many of
22  the statements in light of the controverting evidence regarding the issue of literal falsity.
23  However, the Court determines that certain promotional statements possessing false
24  statements of fact regarding the testing performed on the TITW System to be literally false.
25  Lastly, the Court finds that several of the statements, such as broad untested references to the
26  "efficacy " or "effectiveness" of the TITW System amount only to puffery.

27  ////

28  ////

1   **Accordingly,**

2       **IT IS HEREBY ORDERED** granting in part and denying in part  Plaintiff's Sealed

3   Motion for Partial Summary Judgment Re: Literal Falsity. (Dkt.#43).

4       **IT IS FURTHER ORDERED** denying Plaintiff's Motion to Strike. (Dkt.#63).

5       **IT IS FURTHER ORDERED** denying Defendant's Motion to Dismiss Based on

6   Lack of Subject Matter Jurisdiction. (Dkt.#73).

7       **IT IS FURTHER ORDERED** granting in part and denying in part  Plaintiff's Motion

8   to Strike New Arguments Raised in HomeTeam's Reply.  (Dkt.#92).  Plaintiff's Motion is

9   granted to the extent that the Court rejects Plaintiff's contention that Plaintiff has failed to

10  adduce affirmative evidence supporting the allegations of the Amended Complaint.

11      **IT IS FURTHER ORDERED** granting Defendant's Motion for Leave to Submit

12  Supplemental Expert Affidavit. (Dkt.#99).

13      **IT IS FURTHER ORDERED** granting Plaintiff's Motion for Leave to Supplement

14  its Motion for Partial Summary Judgment. (Dkt.#110).

15      DATED this 29th day of March, 2007.

16

17

18  _____

19                  Mary H. Murgula
                    United States District Judge

20

21

22

23

24

25

26

27

28